AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| United States of America<br>v.<br><br>Miller Steve Jernigan<br><br><br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Case No. 3:26-MJ-70248 LJC |

> **FILED**
>
> Mar 10 2026
>
> Mark B. Busby
> CLERK, U.S. DISTRICT COURT
> NORTHERN DISTRICT OF CALIFORNIA
> SAN FRANCISCO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ____February 1, 2026____ in the county of ____San Francisco____ in the ____Northern____ District of ____California____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of Firearms |

This criminal complaint is based on these facts:

Please see the attached affidavit of FBI Task Force Officer Bryan Zahn

Approved as to form ___*/s/ Sloan Heffron*___
  AUSA Sloan Heffron

☑ Continued on the attached sheet.

_____
/s/
*Complainant's signature*

Bryan Zahn, FBI Task Force Officer
*Printed name and title*

Sworn to by the complainant over the telephone
in accordance with Fed.R.Crim.P. 4.1 and 4(d).

Date: ____03/09/2026____

_____
*Judge's signature*

City and state: ____San Francisco, California____    Hon. Lisa J. Cisneros, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Bryan Zahn, a Task Force Officer with the Federal Bureau of Investigation, having been duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. This Affidavit is submitted in support of a Criminal Complaint and Arrest Warrant for Miller Steve JERNIGAN ("JERNIGAN"). As set forth below, there is probable cause to believe that on February 1, 2026, in San Francisco, California, JERNIGAN violated 18 U.S.C. § 922(g)(1) - Felon in Possession of Firearms.

2. The facts set forth in this Affidavit are based on my own personal knowledge, my review of the reports and other records related to this investigation, information obtained from law enforcement officers and witnesses, and information gained through my training and experience. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of a Criminal Complaint and Arrest Warrant, it does not set forth each and every fact that I, or others, have learned during the course of this investigation. Where this Affidavit reports information learned from others, or from reports or other records, such information is recounted in sum and substance and in relevant part. As this investigation progresses, my understanding of the significance of certain facts and events may evolve.

### AFFIANT BACKGROUND

3. I am a Task Force Officer ("TFO") with the Federal Bureau of Investigation ("FBI") and have been so employed since February 2022. I am currently assigned to the San Francisco Safe Streets Task Force. As a TFO with the FBI, I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7). I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516, including violations of 18 U.S.C. § 922(g)(1).

4. In my current assignment, I am responsible for investigating violations of federal criminal law, including violent crimes and the unlawful possession of firearms and ammunition.

1

5. I am also employed as a police officer for the City and County of San Francisco, California, and have been so employed since June 2012. I am currently assigned to the San Francisco Police Department ("SFPD") Community Violence Reduction Team ("CVRT"). In that role, I investigate violations of federal and state laws, with a focus on violent crimes and crimes committed by members and associates of criminal street gangs. I have authored numerous search warrants and have executed hundreds of search warrants in the State of California related to firearm violations, shootings, homicides, assaults, and drug-related crimes.

## APPLICABLE LAW

6. 18 U.S.C. § 922(g) states, in pertinent part, that "[i]t shall be unlawful for any person . . . (1) who has been convicted in any court of [] a crime punishable by imprisonment for a term exceeding one year" to "possesses in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g). The defendant must also have known, at the time he possessed the firearm, that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year.

## FACTS SUPPORTING PROBABLE CAUSE

### Police Identify JERNIGAN as the Driver of a Vehicle Involved in a Burglary

7. On February 1, 2026, around 11:08 a.m., a police officer working in SFPD's Real Time Investigation Center ("RITC") was notified that a license plate reader ("LPR") camera had alerted to a vehicle suspected of involvement in an automobile burglary that occurred the prior afternoon in San Francisco. The suspect vehicle was a blue Nissan Rogue sport utility vehicle (the "blue Nissan") bearing Nevada license plates numbered 3743C2. Upon receiving the notification, the officer launched an SFPD drone to locate the blue Nissan. Guided by subsequent LPR alerts, the officer flew the drone to the area of 7th Street and Market Street in San Francisco. There, using the drone, the officer found the blue Nissan driving northbound on 7th Street.

2

8. The officer continued monitoring the blue Nissan as it drove through San Francisco city streets. Another SFPD officer operating a separate drone also assisted in tracking the blue Nissan's movements.

9. During this surveillance, members of the RITC contacted officers with SFPD's Citywide Plainclothes Team, who were then conducting an auto burglary / robbery abatement operation in San Francisco. With the assistance of the RITC, plainclothes officers located and conducted in-person surveillance of the blue Nissan. During this surveillance, RITC officers provided the plainclothes officers with still images of the blue Nissan's driver and sole occupant.

10. Among the plainclothes officers to receive these still images was Officer Andrew Lucas, a 16-year veteran of SFPD's Northern Station. Officer Lucas reviewed the still images and identified the driver of the blue Nissan as Miller JERNIGAN. Officer Lucas was familiar with JERNIGAN, who he had personally contacted on several prior occasions, including during JERNIGAN's December 2024 arrest for automobile burglary, felon in possession of a firearm and ammunition, possession of burglary tools, fleeing from police, and probation violations.

11. At the time he identified JERNIGAN in the still images, Officer Lucas was aware that JERNIGAN was on Post-Release Community Supervision and that there was an outstanding warrant for his arrest. Officers performed a records query to confirm that the arrest warrant was active.

12. Eventually, officers observed the blue Nissan drive to San Francisco's Haight-Asbury neighborhood, where it parked on the north side of Waller Street, just east of Stanyan Street. JERNIGAN then exited the blue Nissan, removed a multicolored duffle bag from the rear compartment, and eventually entered an apartment building on the 700 block of Stanyan Street. Meanwhile, officers developed a plan to take JERNIGAN into custody on the outstanding arrest warrant once he exited the apartment building.

***Police Recover Two Loaded Firearms from JERNIGAN***

13. Around 1:00 p.m., Officer Lucas saw JERNIGAN exit the apartment building, dressed in all-black clothing, wearing a black face mask, and carrying the same multicolored

3

duffle bag.  JERNIGAN walked southbound toward the area where the blue Nissan was parked. Officer Lucas advised other officers of his observations.  Among these officers were Caden Girvin and Joseph Gummo, each of whom was already familiar with JERNIGAN from the December 2024 incident.

14.     Officer Girvin, also in plainclothes, observed JERNIGAN walking toward him near the northeast corner of Stanyan and Waller Streets.  Officer Girvin saw that JERNIGAN was wearing a black face mask and was carrying a black backpack and a multicolored duffle bag. As a ruse to distract JERNIGAN, Officer Girvin pointed to the ground and told JERNIGAN that he had dropped money.  JERNIGAN briefly looked to the ground, then looked back at Officer Girvin and began to back away.  Officer Girvin grabbed JERNIGAN, identified himself as a police officer, and ordered JERNIGAN to get on the ground.  As JERNIGAN physically resisted, additional officers arrived on scene and assisted in pulling JERNIGAN to the ground and placing him in handcuffs.

15.     During a search of JERNIGAN's person, Officer Girvin felt and retrieved a 9mm Taurus semi-automatic handgun from JERNIGAN's right front jacket pocket.

16.     Officer Philip Yang found a window punch tool in JERNIGAN's pants pocket. Officer Yang took custody of the multicolored duffle bag JERNIGAN had been carrying, as well as the black backpack, which JERNIGAN had dropped while being apprehended.

17.     In the multicolored duffle bag, Officer Gummo found a .357 caliber Glock Model 31 semi-automatic handgun, as well as a large Ziploc bag containing a total of 38 unfired rounds of .40 caliber ammunition.

18.     In the black backpack, Officer Gummo found a glass mason jar and a plastic container each containing a large quantity of suspected marijuana.  The backpack also contained a digital scale, a box of sandwich baggies, and a prescription pill bottle labeled in another person's name and containing approximately 45 pills of suspected cyclobenzaprine, a muscle relaxant.

4

19.     Officer Girvin later examined the 9mm Taurus GC3 semi-automatic handgun recovered from JERNIGAN's jacket pocket.  He determined that a magazine containing seven unfired rounds of 9mm ammunition was inserted into the well of the pistol, and that one additional unfired round of 9mm ammunition was in the chamber of the firearm.

20.     Officer Russell Fong separately processed the .357 caliber Glock Model 31 semi-automatic handgun recovered from the multicolored duffle bag.  He found that a magazine containing five unfired rounds of .357 caliber ammunition was inserted into the well of the pistol, and that one additional unfired round of .357 ammunition was in the chamber of the firearm.  A rail-mounted combination laser sight / flashlight was attached beneath the barrel of the firearm.  A records query revealed that the Glock pistol was reported stolen out of Stockton, California in September 2025.

***Interstate Nexus of the Recovered Firearms***

21.     As part of this investigation, I submitted photographs of the Taurus firearm and the Glock firearm to Special Agent ("SA") Payton Smith of the Bureau of Alcohol, Tobacco, Firearms, and Explosives.  SA Smith has received specialized training in tracing the place of manufacture of firearms and determining the interstate nexus of a firearm.  SA Smith advised me that based on his review of the photographs, it was his opinion that the Taurus firearm and the Glock firearm recovered in this case were each manufactured outside the State of California.

***JERNIGAN's Prior Felony Convictions***

22.     On or about September 9, 2016, in California Superior Court, County of San Francisco, JERNIGAN was convicted of one count of Robbery, a felony, in violation of California Penal Code § 211.  For this offense, he was sentenced to three years in state prison (suspended), 43 days in jail, and three years' probation.  On or about March 9, 2018, JERNIGAN's probation was revoked and he was sentenced to three years in state prison.

23.     On or about November 22, 2021, in the United States District Court for the Northern District of California, JERNIGAN was convicted of one count of Felon in Possession of Ammunition, a felony, in violation of 18 U.S.C. § 922(g)(1).  For this offense, he was

5

sentenced to two years in federal prison and three years of supervised release. On or about January 23, 2024, his supervised release was revoked and he was sentenced to eight months in federal prison.

24.     On or about October 9, 2024, in California Superior Court, County of San Francisco, JERNIGAN was convicted of one count of Violent Felon in Possession of a Firearm, a felony, in violation of California Penal Code § 29900(a)(1). For this offense, he was sentenced to two years in state prison.

## CONCLUSION

25.     Based upon the information set forth in this Affidavit, there is probable cause to believe that on February 1, 2026, Miller Steve JERNIGAN committed a violation of 18 U.S.C. § 922(g)(1) – Felon in Possession of Firearms.

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

Respectfully submitted,

/s/

BRYAN ZAHN
Task Force Officer
Federal Bureau of Investigation

Sworn to before me over the telephone and signed by me pursuant to Fed.R.Crim.P. 4.1 and 4(d) on this 9th day of March, 2026.

HONORABLE LISA J. CISNEROS
United States Magistrate Judge

6